DAMIÁN CANALES MELECIO, Plaintiff and Appellee, *v.* ALFREDO CHÉVERE MARTÍNEZ, CARIBBEAN DAIRY, INC., and COMMERCIAL INSURANCE COMPANY, Defendants and Appellants.

No. 11004. Argued February 1, 1954.—Decided February 16, 1954.

*Bolívar Pagán* for appellants. *María Valentín Collazo* and *Francisco Colón Gordiany* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In the morning of August 4, 1951 at Quisqueya Avenue, in front of Las Monjas Race Track, Hato Rey, Puerto Rico, a Ford vehicle, truck model, ran over Damián Canales Melecio, causing injuries in different parts of his body, including one in his left ankle with fracture of the second, third, fourth, and fifth metatarsals and in the proximal phalanx of the fifth toe of his left foot.

Canales Melecio filed a complaint in the former District Court, San Juan Section, against Alfredo Chévere Martínez, as driver of the vehicle, against the Caribbean Dairy Inc., as owner of the vehicle and against the Commercial Insurance Co.[1]

---

[1] In view of the errors assigned by appellants, it is necessary to set forth all the averments of the complaint. They are as follows:

"1.—That plaintiff herein is of legal age and resident of the municipality of Río Piedras, Puerto Rico.

"2.—That defendant Alfredo Chévere Martínez is of legal age, married and resident of the municipality of Toa Alta, Puerto Rico.

"3.—That the Caribbean Dairy Inc. is a corporation with plant and offices at No. 1 Santa Ana Street, Santurce, Puerto Rico and managed by its owner, Ramón Rosado.

"4.—That the codefendant, Commercial Insurance Company, is an insurance company represented in Puerto Rico by its agents Insular Underwriters Corp., with offices in San Juan, Puerto Rico.

"5.—That on August 4, 1951 the Ford vehicle, truck model, license No. H–80572, was and still is owned by the Caribbean Dairy Inc., of Santurce, Puerto Rico.

"6.—That on August 4, 1951, at about 6:30 A. M. at Quisqueya Avenue in front of Las Monjas Race Track, Hato Rey, Puerto Rico, the aforedescribed vehicle, driven then and there by its chauffeur, Alfredo Chévere

Defendants answered denying the essential averments of the complaint and pleaded certain affirmative defenses.[2] A trial was held on the merits and the trial court rendered judgment ordering defendants to pay jointly to plaintiff the sum of $1,530 plus costs and $150 for attorney's fees, after setting forth the following findings of fact:

"1.—The plaintiff is of legal age and a resident of the municipality of Río Piedras, Puerto Rico; the codefendant Alfredo Chévere Martínez, is of legal age, chauffeur and a resident of the municipality of Toa Alta, Puerto Rico; the codefendant Caribbean Dairy Inc. is a firm which operates under that name with offices at No. 1 Santa Ana Street, Santurce, Puerto

Martínez ran over plaintiff Damián Canales Melecio, causing him injuries in his back, his right arm, and in his left ankle with fracture of the second, third, fourth and fifth metatarsals, and in the proximal phalanx of the fifth toe of his left foot, as well as other injuries in his body, for which he was taken to the Municipal Hospital of Santurce, Puerto Rico, for hospitalization and medical treatment.

"7.—That said accident was due to the wanton negligence, carelessness, imprudence and inexperience of the driver, Alfredo Chévere Martínez, consisting of such wanton negligence, carelessness, imprudence and inexperience that the aforesaid vehicle was travelling at an unauthorized speed on an urban street such as the one where he was driving, without blowing his horn or giving any kind of alarm; that he did not take the necessary care.

"8.—That because of his injuries and bruises, caused by the accident, the plaintiff Damián Canales Melecio, had to be confined and treated in the Municipal Hospital of Santurce, having suffered intense physical and moral pain, of which he has not yet recovered and which might subsequently bring about serious consequences.

"9.—That because of the accident the plaintiff has suffered damages amounting to $2,069 for the following items:

| | |
|---|---:|
| "For medical treatment | $20.00 |
| "For medicines | 29.00 |
| "In fares for taxis and other public vehicles | 20.00 |
| "For physical and mental injuries | 2,000.00 |
| Total | $2,069.00" |

[2] Said defenses consisted of the following: (a) the complaint does not state facts sufficient to constitute a cause of action; (b) the accident was unfortunate and unavoidable, or it was caused exclusively by the fault and negligence of plaintiff himself; and (c) the chauffeur Alfredo Chévere Martínez was driving the vehicle at the time of the accident at a moderate speed, on his right-hand side, blew his horn and took all reasonable measures and precautions to avoid an accident.

Rico; the codefendant Commercial Insurance Co., is an insurance company represented by its agents Insular Underwriters Corp., with offices in San Juan, Puerto Rico.

"2.—On August 4, 1951, the codefendant Caribbean Dairy Inc., was the owner of a Ford V–8 vehicle, Truck F–7 model, license H 80–572, which was driven on that day, between six and seven a. m. by its employee, Alfredo Chévere Martínez.

"3.—On August 4, 1951, at about 6:30 a.m. plaintiff left his house and was on his way to work along Quisqueya Avenue, Hato Rey, Puerto Rico, walking on the right-hand side of the street.

"4.—Said Ford V–8 vehicle Truck F–7 model, license H 80–572, owned by the codefendant Caribbean Dairy Inc., and driven at the time by the codefendant Alfredo Chévere Martínez in the course of his employment, as employee of the codefendant, was running at that same time and at considerable speed, along the aforesaid street in the same direction as plaintiff, without sounding the horn or taking any precautions, and upon approaching the place along which plaintiff was walking, the defendant swerved to the right at the very place where plaintiff was walking, and hit him on the back causing him to fall to the ground upon receiving the impact.

"5.—At the time of the accident there were no other vehicles travelling at the place along Quisqueya Avenue where the accident occurred; the automobile of codefendant was the only one travelling at that time and had enough space to continue its journey without interruption, without there being any reason why he should swerve to the right and invade the place at the public thoroughfare along which plaintiff was walking.

"6.—As a result of the accident the plaintiff became unconscious and was taken to the Municipal Hospital of Santurce by the codefendant Chévere Martínez and his companion, Pedro Meléndez, where he was assisted and treated for his bruises and fractures, in different parts of the body, being removed to his home on the same day of the accident after having been treated by the personnel of the hospital.

"7.—As a result of the accident the plaintiff suffered bruises on his back and in his right arm, erosions in his left ankle and fractures in his second, third, fourth and fifth metatarsals and in the proximal phalanx of his left toe, as well as several minor injuries in other parts of the body. His left foot was put in a cast for five weeks. From his own house

he had to go to the hospital for treatment for two months, being finally discharged two and a half months after the accident. He suffered severe physical pain and moral anguish, and although he was cured of the bruises in his back and his right arm and of the erosions in his ankle, he still feels pain when he walks on his left foot.

"8.—Plaintiff has a permanent partial disability of his left foot as a result of the accident, this incapacity giving rise to plaintiff's functional weakness when walking on that foot.

"9.—The accident was solely and exclusively due to the fault and negligence of the agent of codefendant Caribbean Dairy Inc., who was driving and operating its automobile when the accident took place."

Feeling aggrieved, the defendants appealed to this Court and in their brief allege the commission of the following errors:

"1.—The lower court erred in rendering judgment against codefendant Commercial Insurance Company and in ordering it to pay compensation.

"2.—The lower court erred in rendering judgment against the Caribbean Dairy Inc., and ordering it to pay compensation.

"3.—The lower court erred in rendering judgment, contrary to the evidence, against the three defendants.

"4.—The lower court erred in assessing plaintiff's physical and moral damages in the excessive amount of $1,500, and $30 for all his medical expenses and car fares."

The only averment in the complaint regarding the codefendant, Commercial Insurance Co., is to the effect that it is an insurance company represented in Puerto Rico by its agents Insular Underwriters Corporation (see footnote 1, *supra*); but it does not allege the existence of any privity between the codefendant and the owner of the vehicle which caused the accident.[3] This by itself would not be fatal if such privity would appear from the evidence since in that case the complaint may be regarded as amended to conform to the evidence. *Portela* v. *Saldaña*, 39 P.R.R. 490; *D'Azizi*

---

[3] The findings of fact of the trial court are silent as to this particular.

v. *Alcaraz*, 40 P.R.R. 898; *Franqui* v. *Fuerte Hnos.*, 41 P.R.R. 221; *Heirs of Franceschi* v. *González*, 46 P.R.R. 41; *Almodóvar* v. *Acosta*, 43 P.R.R. 191; *Díaz* v. *García*, 47 P.R.R. 448; *Longchamps* v. *Franceschi*, 56 P.R.R. 662; *Font* v. *Viking Construction Corp.*, 58 P.R.R. 691.

This brings us to consider all the evidence introduced herein. That of the plaintiff consisted of his own testimony, and of witnesses Álvaro Osorio, Dr. Iván H. García and Dr. Raúl A. Armstrong. As documentary evidence he produced a certificate issued by the Head of the Automobile Division of the Department of Public Works, setting forth that on August 4, 1951 the motor vehicle, license H 80–572, Ford V8, Truck F–7 model, was registered under the Caribbean Dairy Inc. This evidence, as a whole does not refer, even remotely to the codefendant, Commercial Insurance Co. The plaintiff and the witness Octavio Osorio merely described the accident, which according to Osorio was caused by a vehicle "which was a van, truck model, with a big frame—used for selling milk." "It was a Ford, in good condition." The other two witnesses of the plaintiff, Drs. García Ramírez, and Armstrong testified on the injuries sustained by plaintiff and the assistance they gave him.

However, the appellee urges that the standing of the codefendant, Commercial Insurance Company, as an insurance company was established by the testimony of Dr. Francisco Antonio Ferraiouli, one of defendants' witnesses. We do not agree. This witness only testified on cross-examination that he did not remember whether he examined plaintiff by order of the court or by order of the company, and that he thought that it was the company who paid him. It does not appear from the record which "company" that was. Nor is there any other evidence in the record, not even circumstantial, which tends to establish the fact that the Commercial Insurance Company was the insurer of the vehicle that ran over plaintiff. In the absence of such evidence, we must conclude that the first error was committed. Therefore, the judg-

ment appealed from must be reversed as to codefendant Commercial Insurance Company.

■■ The second assignment alleges that there is no basis in the averments or in the evidence, for rendering judgment against the Caribbean Dairy Inc., ordering it to pay compensation.

Appellants urge that the complaint did not allege that Alfredo Chévere Martínez was an employee of the Caribbean Dairy Inc., in the course of his employment, and that neither does the evidence fill that omission; that the evidence does not identify the vehicle of the codefendant as the one involved in the accident, nor does it show that the Caribbean Dairy Inc., was an enterprise which used that vehicle in its business.

We disagree. The witness Álvaro Osorio testified that the vehicle which ran over plaintiff "was a van, truck model, with a big frame—used for selling milk." He further testified that it was a Ford vehicle. This description coincides substantially with that of the vehicle owned by the codefendant Caribbean Dairy Inc., to which the certificate issued by the Head of the Automobile Division refers, to wit: "motor vehicle, license H 80–572—Ford V8, Truck Model F-7, 1948." The argument that this evidence is insufficient to prove that it was codefendant's vehicle which hit plaintiff is proper; but the record shows still more, sufficient to produce the moral conviction that that is the truth. Let us see. Policeman Manuel Ríos Rodríguez, witness of the defendants-appellants testified the following on cross-examination:

"Q —And where else did you go, while making the investigation?

"A —Well, I met the chauffeur who was driving the vehicle. There, I talked with the injured man and with the chauffeur; and then I asked the latter whether there were any witnesses and he told me that the only witness was a laborer who was riding in the truck with him. From there, we left for the Dairy.

"Q—Tell me, sir, at what time did you arrive at the Dairy? Did you leave with the Dairy chauffeur, and his helper?

"A—I left in the patrol car which I was driving.

"Q—And where did the chauffeur ride?

"A—I don't remember whether he went with me in the patrol car or in his truck.

"Q—At what time did you arrive at the Dairy?

"A—I don't remember the time.

"Q—That is, the company owning the vehicle. Can you remember?

"A—I don't remember.

"Q—Did you take all day, Mr. Ríos?

"A—No, sir, the morning.

"Q—All morning?

"A—Not all.

"Q—You don't remember at what time you arrived at the Dairy?

"A—No, sir.

"Q—And what did you do at the Dairy?

"A—There, I saw the witness and spoke with him.

"Q—Did you also speak with the owner of the Dairy there?

"A—I spoke with a man there, but I don't think he was the owner."

Pedro Meléndez, another of defendant's witnesses, after testifying that on the day of the accident he was sitting next to the truck driver who ran over plaintiff, states on cross-examination, the following:

"Q—Where do you work?

"A—At the Caribbean Dairy.

"Q—Do you still work there? That's my question.

"A—No, sir, I don't work there now.

"Q—Where do you work at present?

"A—On a Caguas truck owned by Juan Rivera.

"Q—As driver?

"A—No, as helper.

"Q—Since when did you stop working for the Caribbean?

"A—Almost a year ago. I left this last Christmas.

"Q—Did you cease working at the same time that Chévere did?

"A—No. He left before I did.

"Q—And you say it is now a year since you worked for the Caribbean?

"A—Almost a year.

"Q—And how come you are here today?

"A—I came because Mr. Bolívar asked me.

"Q—Did he send for you at Caguas?

"A—Exactly. He sent for me at Caguas.

"Q—When?

"A—On Monday. But I came on Tuesday because I could not make it on Monday.

"Q—Have you seen Chévere around, the driver of the vehicle?

"A—Not at all. Not since he left the company. I don't know his whereabouts."

From all this evidence it may be logically inferred that (1) at the time of the accident the driver Chévere Martínez was an employee of the codefendant, Caribbean Dairy, Inc., (2) that said employee drove on that day [of the accident] a vehicle which answers the description of the vehicle owned by the codefendant, where another of its employees was also riding, and that in the absence of evidence to the contrary it establishes the identity of the vehicle of the codefendant as the one causing the accident, and (3) that said vehicle is used for selling milk.

This last circumstance fixes codefendant's vehicle as belonging to a company. Consequently, it is presumed that the driver Chévere Martínez was acting within the scope of his employment for the Caribbean Dairy Inc. *Pereira* v. *Commercial Transport Co.*, 70 P.R.R. 609, and cases cited therein. We conclude that the second error was not committed.

The third assignment lacks merit. Plaintiff's evidence, believed by the trial court, showed that on the day of the occurrences, between 6:00 and 6:30 a. m., the plaintiff was on his way to work, walking on his right-hand side along Quisqueya Avenue, in front of Las Monjas Race Track, in Hato Rey, that the vehicle driven by Chévere Mar-

tínez was going in the same direction at great speed, without sounding horn, or taking due precautions, running over plaintiff and throwing him into a gutter. The evidence of defendants themselves establishes the fault and negligence of the driver Chévere Martínez. This was to the effect that the plaintiff was walking on his right-hand side; that Chévere Martínez was driving the vehicle at a moderate speed, of about 20 to 25 miles per hour and that he sounded his horn upon approaching plaintiff but the latter merely "turned to one side" wherefore the truck collided with him. Accepting this version as true, the duty of the driver Chévere Martínez, was to stop the vehicle or swerve to his left in order to avoid the accident. The law does not entitle him to run over plaintiff, if the latter did not evade the vehicle.

Under such circumstances it is foolish to argue that the accident was not due to the fault and negligence of the driver.

The fourth error likewise lacks merit. The evidence in the record warrants fully the reasonableness of the amount awarded as compensation.

For the reasons stated, the judgment appealed from will be reversed as to the defendant Commercial Insurance Company, and affirmed as to the other codefendants.